(43 Misc. Rep. 205.)

### HUDSON RIVER POWER TRANSMISSION CO. v. UNITED TRACTION CO.

(Supreme Court, Special Term, Saratoga County. March, 1904.)

1. CONTRACT—SUPPLYING ELECTRIC POWER—ACTION FOR BREACH—COMPLAINT —ALLEGATIONS OF PERFORMANCE—SUFFICIENCY.

A contract provided that plaintiff was to furnish defendant electrical energy for 10 years in agreed monthly amounts. All the payments, less certain deductions, if any, were to be made prior to the 10th day of the next ensuing month, and the deficiencies in the amount of energy supplied were to be compensated for at a fixed rate. It was also provided that if, by accident, lack of water, or other matter beyond its control, plaintiff should at any time be unable to furnish the electrical energy in accordance with the contract, defendant should have the right to de-

duct a certain price for such deficiency. The agreement recited that it was an entire contract, and that plaintiff was to furnish to defendant, in addition to the electrical energy before mentioned, all electrical energy in excess thereof that plaintiff's water power plant was capable of producing, at a specified price. In an action to recover for energy supplied under the contract (which was made a part of the complaint) plaintiff alleged performance on its part, but also alleged that during the second month the energy was furnished as agreed, of a specified value, "less certain small deficiencies, which, as measured and computed by defendant, entitled the latter to the deductions at the rate specified in the said contract," aggregating a certain sum, leaving due to plaintiff a specified balance for the second month. The complaint alleged nonpayment of this balance, and sought to recover a certain amount as prospective profits. *Held*, that the complaint was insufficient, since it alleged certain deductions or deficiencies in delivery of the power, without specifying how they were excusable, and without alleging the delivery of, or offer to deliver, all of the surplus energy produced during the month.

**2. SAME—BREACH OF CONTRACT—RESCISSION.**

Plaintiff, not having abandoned the contract, had no right to rescind it and recover prospective profits on defendant's failure to pay the monthly installment.

**3. SAME—ACTION FOR BREACH—COUNTERCLAIM.**

In an action for damages for the breach, defendant could deny its liability, and, as a counterclaim, recover damages for plaintiff's default.

**4. SAME—PLEADING COUNTERCLAIM.**

A counterclaim alleged that plaintiff had refused to deliver surplus energy, and had wrongfully sold it to others. *Held*, that the counterclaim was not demurrable for failure to allege that the surplus energy was demanded.

**5. SAME—ANSWER—PLEADING DEFENSES.**

Defendant's answer alleged that plaintiff failed to furnish the full amount of energy required by the contract; that it failed to deliver the surplus energy; and that it did produce such surplus, and could have delivered it, but sold it elsewhere, in violation of the contract, to defendant's damage. The answer then alleged that a course of dealing had grown up between the parties whereby plaintiff presented no bills, but the engineers of the parties got together some time during the month, determined the amount of energy used, and any deficiencies to be deducted, and arrived at the result due; that while the parties were negotiating in this matter as to the amount due, plaintiff requested time to consider the matter, to which defendant consented; that the law day for payment passed, and that plaintiff immediately repudiated the contract, though defendant was ready and willing to pay. *Held*, that the answer presented a good defense to the action.

**6. SAME—EQUITABLE DEFENSES.**

A further answer, after repeating the allegations of the preceding answer, alleged that after plaintiff made the contract it sold out to another company, which in turn sold to a third company, and that the companies together had a monopoly of the production of electrical energy by water power; that plaintiff conspired with the other companies to have the contract forfeited for nonpayment in order to compel defendant to buy energy at a higher rate from the successor company in control. *Held*, that the answer presented a proper defense and counterclaim, if not for the recovery of the large amount of damages claimed, at least as an appeal to the equitable power of the court to relieve defendant from the condition of forfeiture which plaintiff's act brought about.

Action by the Hudson River Power Transmission Company against the United Traction Company. On demurrer to four separate counts of the answer. Demurrer overruled.

88 N.Y.S.—29

Richard L. Hand and Henry W. Williams, for plaintiff.
Judson S. Landon and Edgar L. Fursman, for defendant.

JOHN M. KELLOGG, J. The plaintiff having demurred to four separate counts of the defendant's answer for insufficiency, the defendant, as it may properly do, challenges the sufficiency of the complaint. And such demurrer brings before the court the whole record, and judgment goes against the party having the first insufficient pleading. Baxter v. McDonnell, 154 N. Y. 432, 48 N. E. 816. And this rule applies with equal force whether the demurrer is to an alleged defense or an alleged counterclaim. Village of Little Falls v. Cobb, 80 Hun, 20, 29 N. Y. Supp. 855. In determining the sufficiency of the complaint and of the answer the pleading must be liberally construed, and every allegation, whether expressly or only impliedly or argumentatively averred, is admitted. Nat. Contracting Co. v. Hudson R. W. P. Co., 170 N. Y. 439, 63 N. E. 450; Atkins v. Judson, 33 App. Div. 42, 53 N. Y. Supp. 504.

First, at to the complaint. It seeks to recover payment for furnishing the electrical energy under the written contract which it states is "ready to be produced when and where this court may direct," and then purports to give the pleader's conclusion as to what the contract is, reciting that the plaintiff was to furnish to the defendant electrical energy beginning July 1, 1902, and continuing 10 years, in agreed amounts monthly, and for August, energy equal to 2,750 electrical horse power, for which it was to receive $4,670.84. All of the payments, less certain deductions, if any, were to be made prior to the 10th day of the next ensuing calendar month, and the deficiencies in the amount of energy supplied were to be compensated for at a fixed rate. That during the month of August the energy was furnished, as agreed, of the value of $4,670.84, "less certain small deficiencies, which, as measured and computed by the defendant, entitled the latter to the deductions at the rate specified in the said contract," aggregating the sum of $210.26, leaving due to the plaintiff a balance of $4,460.58 for the month of August, and alleges nonpayment, and seeks to recover $350,000 prospective profits. The demurrer admits that a copy of the contract is attached to the answer, and the reference to the contract in the complaint as "ready to be produced when and where the court may direct" makes that contract when produced and identified a part of the complaint itself. The contract itself therefore takes the place in the complaint of the conclusions of the pleader as to its terms. In the fourth paragraph of the contract it is provided that if by reason of accident, lack of water, or other matter beyond its control, the power company shall at any time be unable to furnish the electrical energy fixed in accordance with the terms of this agreement, the traction company shall have the right to deduct a certain price per horse power for such deficiency, which is fixed as the liquidated damages "for failure to furnish said electrical energy as herein provided." Section 13 of said agreement provides: "This agreement is an entire contract, each stipulation thereto being a part of the consideration for every other;" and by the sixth provision of said contract it is provided that the

plaintiff shall furnish to the defendant, in addition to the electrical energy before mentioned, all electrical energy in excess thereof that the power company's water power plant is capable of producing, at a price named therein. It is clear, if the contract is considered as a part of the complaint, that the plaintiff has not sufficiently alleged a performance of the contract upon its part, for the allegation that it has duly delivered the electrical energy which by said contract it had agreed to deliver to the defendant, and duly performed the said contract in all things, is qualified by the allegation that it did not deliver the full 2,750 electrical horse power during August which would entitle it to the $4,670.84, for by folio 12 of the complaint the other allegations are qualified by the statement that during the month of August it delivered the energy to be delivered for that month of the value of $4,670.84, less certain small deficiencies, which, as measured and computed by the defendant, entitled the latter to deductions at· the rate specified in said contract aggregating the sum of $210.26. Neither does the complaint allege that plaintiff delivered, or offered to deliver, all of the surplus energy, or any part of it, above that provided for in the first item of said contract. The plaintiff was absolutely bound to deliver the energy if it could produce it, and a full and substantial delivery or tender thereof was a condition precedent to its recovery, except in the cases provided for in the contract, where deductions were to be made if the failure arose from certain causes. The complaint gives no idea of what the deficiencies were or how caused. If the plaintiff willfully and intentionally refused to supply all of the energy agreed by it to be done, defendant would have a complete defense, for the plaintiff must show, in order to recover, that the failure to deliver the full amount is covered by one of the excuses mentioned in the contract, or arose in some indefinite way for which the defendant is as much responsible as itself, or by some inadvertence or excusable cause. It therefore seems that the complaint, by failing to show that the deficiencies arose in some excusable way, does not state a cause of action. The plaintiff's conclusion that the deficiencies as measured and computed by the defendant entitled it to the deductions is not an allegation that the deficiencies arose without the fault of the plaintiff, or in a way for which it is excused, and the complaint only alleges in an issuable form that the defendant's computation of the deficiencies amounted to $210.26. And, while that amount of deficiency might not be a substantial breach of the contract, it is still incumbent upon the plaintiff who brings his action alleging performance to in some way account for it, and show that he has not willfully and intentionally made a breach of the contract which it accuses the defendant of not performing. Spence v. Ham, 163 N. Y. 220, 57 N. E. 412, 51 L. R. A. 238; Van Clief v. Van Vechten, 130 N. Y. 571, 29 N. E. 1017. If the plaintiff is to recover prospective profits only, as the prayer for relief seems to indicate, it is insufficient. The breach alleged only enables it to recover for the energy actually delivered. A failure in payment of one installment is alleged, but no facts showing an abandonment or repudiation of the contract by the defendant. The plaintiff cannot, therefore, rescind the contract and recover prospective profits.

Wharton & Co. v. Winch, 140 N. Y. 287, 35 N. E. 589. The complaint does not, therefore, state a cause of action.

As to the counterclaims, the plaintiff contends that the matters alleged are not proper subjects of counterclaim, for the reason that they do not coexist with the plaintiff's claim, but, if true, destroy it, and are therefore matters of defense, and not counterclaims; that the plaintiff alleges it has performed and the defendant defaulted on a certain contract, and it is not legitimate for the defendant by way of counterclaim to allege that it has performed and the plaintiff has defaulted, and seek an affirmative recovery. It seems to be the policy of the law to settle one dispute in a single action, and not drive litigants to cross-actions. If plaintiff claims damages growing out of the contract or transaction, the defendant may deny its liability or default, and as a counterclaim allege and establish the liability and default of the plaintiff and recover its damages. Our Appellate Division has given this rule a wide application in holding that a defendant sued for an assault and battery may deny that he was the aggressor, and as a counterclaim allege that the plaintiff was the aggressor, and recover his damages therefor. Deagan v. Weeks, 67 App. Div. 410, 73 N. Y. Supp. 641. It is true that matter purely defensive, and not containing the elements of a cause of action, cannot become a counterclaim by calling it so. Walker v. American C. Ins. Co., 143 N. Y. 167, 38 N. E. 106. In this last case, where the defendant claimed that its answer was admitted by failure to reply, the court held the answering matter was purely defensive, and that although the defendant demanded a reformation of the policy, the subject-matter of the policy being destroyed, the facts did not constitute a cause of action, but practically concedes that, if the property to be insured still existed, so that a cause of action was alleged for reformation, it would be a counterclaim, although it was also matter constituting a defense. I therefore hold that the matters alleged in the various answers as counterclaims are proper, if sufficiently alleged.

As to the ninth answer, the alleged counterclaim alleges the contract; that by its terms the plaintiff was to furnish and the defendant take all the excess of electrical energy above that mentioned in the first item of the contract that the plaintiff's water-power plant was capable of producing, and that it did produce a large amount of excess of energy, but in violation of said contract the plaintiff wrongfully failed and refused to deliver the same to the defendant, but sold it to others, against the defendant's protest, and in violation of the contract, and that by reason of said breach the defendant had sustained damages $1,073.20. To the criticism that this answer does not allege a request to deliver the energy, it is an answer that it was utterly useless for the defendant to request the delivery if the plaintiff had already refused it, and delivered it to others, against its protest. Shaw v. Republic Life Ins. Co., 69 N. Y. 286; Robinson v. Frank, 107 N. Y. 655, 14 N. E. 413. And the plaintiff's agreement was an independent one to deliver the energy before payment was required, and its performance was to precede any act of the defendant. 9 Cyc. 719. I therefore hold this answer sufficient.

The tenth answer alleges the contract and its performance by the

defendant; that the plaintiff has wrongfully, in violation of the contract, ceased to deliver the energy as agreed, and refused so to do, and refuses to carry out the contract; that the contract is valuable to the defendant, and the energy cheaper than could be obtained elsewhere, and continues for 18 years; and that the refusal has caused the defendant damage in the sum of $1,369,444.44. Within the rules above stated, this answer seems to contain every element necessary to constitute a cause of action, and is a proper counterclaim.

The eleventh answer the plaintiff treats as a counterclaim, but it is alleged only as a further answer and defense, both in law and equity. No affirmative judgment is asked, and it should be treated as a defense, rather than a counterclaim. It alleges the contract; the plaintiff's failure to furnish the full amount of energy required by subdivision 1 of the contract, such deficiency amounting to $216.65; the failure to deliver the surplus energy provided for by section 6 of the contract; that plaintiff did produce such surplus, and could have delivered it, but refused to do so, and sold it elsewhere, in violation of the contract, to the defendant's damage of $1,073.20. It then alleges that a course of dealing had grown up between the parties whereby the plaintiff presented no bills, but the engineers of the parties got together some time during the month after the energy was supplied, determined the amount of energy used, and any deficiencies to be deducted and arrived at the result due; that at the meeting so held the defendant claimed credit for both of said items, and the plaintiff's representative consented to allow the first item, but objected to the second, and requested time and opportunity to refer it to the other officers of the plaintiff, saying he would report after such determination. Defendant assented to such time, and, relying upon such negotiation, and the request of the plaintiff for time, the payment was not made by the 10th of September, the law day, and the amount had not then been ascertained; that defendant was ready and willing to pay, and at the time of the meeting offered to pay if said items were deducted, or whatever amount was determined to be due; that defendant did not then or now want to rescind said contract, but the same was valuable, and it was desirous and is now desirous to pay whatever is due, and to continue the same; that its omission to pay arose from such negotiation, and that the plaintiff had seized that pretext to declare the contract forfeited, and at midnight on the 10th of September repudiated the contract, and refused to perform the same, to the defendant's damage of $1,369,-444.44. These matters must certainly be a defense to the cause of action alleged in the complaint, or to some part of it. If true, it is certainly a defense to the claim of $350,000 prospective profits sought to be recovered. And, even though plaintiff has not properly alleged a cause of action as to such profits, it cannot defeat the answer aimed at it by claiming that its own pleading does not sufficiently state a cause of action in that respect.

The twelfth answer repeats the allegations of the eleventh answer, and alleges that the plaintiff, after making the contract, sold itself to the Hudson River Electric Company, and thereafter the said electric company sold itself to the Hudson River Water Power Company,

with the result that said latter company controlled the two former companies, and thereby obtained control and management of the plaintiff's plant, and obtained a monopoly of the production of electrical energy by water power upon the Hudson river, and, except for said contract, was able to extort from the defendant a larger price for whatever energy it should deliver to the defendant than the contract price; and that the said three companies combined together to compel the defendant to pay a larger price for energy than mentioned in the contract, and which larger price must be paid to the Hudson River Water Power Company by reason of the fact that before said combination the defendant had agreed with it to take from it all energy which it might require, except such as it was entitled to under the contract in suit; and that the price to be paid for surplus energy to the said water power company was much larger than the contract price; and that at midnight on the 10th of September the plaintiff refused to supply the energy, and it was suspended, and in a few moments afterward it was supplied, but the Hudson River Electric Company claimed that it was supplying it under its contract at the larger price; and that the plaintiff had caused and brought about the default of the defendant by lulling it into a state of seeming security in order to extort and force it to pay said larger price, and that it will have to pay said larger price for years if this contract with the plaintiff is not held binding, to its damage of $1,369,444.44. This answer, as I understand it, alleges an excuse for the nonpayment of the money upon the contract day; that the amount was unliquidated; that the plaintiff asked time to adjust and consider the matter, and thereby caused the delay; and that it did said acts in conspiracy with the other three companies mentioned for the purpose of avoiding said contract, and in order to compel the defendant to pay a much larger price to the company which owned the plaintiff. It seems that this answer foreshadows a proper defense and counterclaim, if not for the recovery of the large amount of damages claimed, at least as an appeal to the equitable power of the court to relieve it from the condition of forfeiture which the plaintiff's acts have brought about.

Perhaps it was not necessary to set out all these matters in the various answers, and there may be unnecessary repetitions, but that question is not before the court. It is only the question as to whether the matters alleged in each answer are a defense or counterclaim. The demurrer to the several answers is therefore overruled, and interlocutory judgment is directed accordingly, with leave to the plaintiff, upon paying $35 costs, to withdraw said demurrer, to amend its complaint if so advised, or to reply. The form of judgment may be submitted, and, if not agreed upon, will be settled on five days' notice.

Judgment accordingly.